THE YONKERS GAZETTE COMPANY, Respondent, *v.* ALLEN TAYLOR,
Appellant.

*Corporation — what agreement to subscribe to the stock of a contemplated corporation is absolute — that the proposed name of the corporation is changed is immaterial — original subscribers need not pay ten per cent at the time of making the subscription — distinction between different forms of subscriptions to stock.*

An instrument which, after referring to a plan to form a corporation, states that "the undersigned hereby subscribe for the number of shares set opposite our names," is absolute and unconditional, contemplates no further act upon the part of the signers, and is binding when, being unrevoked, it is acted on by the corporation then in contemplation of formation.

The fact that the corporation was incorporated under a different name from that mentioned in the subscription agreement, because of the Secretary of State's decision that such name was in violation of the General Corporation Law, is immaterial as the contract is to be regarded as having been made in contemplation of the exercise of the authority vested in the State officers.

The payment of ten per cent when the agreement to incorporate is made is not essential to its validity, such payment being required only of those who subscribe after the organization of the corporation.

The distinction between an agreement to form a corporation and to subscribe to its stock, which, when acted upon by the corporation, is binding, and an agreement to subscribe for stock in a corporation thereafter to be formed, which is not binding, considered.

APPEAL by the defendant, Allen Taylor, from a judgment of the City Court of Yonkers in favor of the plaintiff, entered in the office of the clerk of said court on the 24th day of November, 1897, upon the decision of the court rendered after a trial before the court without a jury, and also from an order, entered in said clerk's office on the 24th day of November, 1897, denying the defendant's motion for a new trial made upon the minutes.

*Allen Taylor*, for the appellant.

*John H. Ferguson*, for the respondent.

HATCH, J.:

This action is brought to enforce liability upon a claimed subscription to the capital stock of the plaintiff. Prior to the formation of plaintiff as a corporation, the defendant signed an agreement by virtue of the terms of which, and subsequent action on the part of the plain-

tiff, after its incorporation, the liability of the defendant is claimed to exist.    This agreement provides, in substance, that it is proposed to publish a daily edition of the Yonkers *Gazette* in connection with a weekly paper of that name ; that in furtherance of such purpose it is proposed to organize a corporation under the title of " The Gazette Publishing Company," with a capital stock of $15,000, divided into 150 shares of $100 each ; that the plant and good will of the Yonkers *Gazette* should be turned over to the corporation, in return for which it should receive seventy shares of the capital stock, and the remaining eighty shares were to be offered for subscription.    Then follows the agreement : " We, the undersigned, hereby subscribe for the number of shares set opposite our names." This was signed by the defendant, and one share set opposite his name.    Steps were immediately taken to form the corporation, all of which seem to have been in compliance with the statute. The defendant took no part in these proceedings, and did not become one of the incorporators.    His name, together with his post office address and the amount of his subscription, was attached to the certificate required by the Business Corporation Law (Chap. 567, Laws of 1890).    When the certificate came to be filed, it was found that there existed another domestic corporation of the same name, and for this reason the Secretary of State refused to receive and file the certificate, holding that it violated section 6 of the General Corporation Law (Chap. 563, Laws of 1890, as amended by chap. 687, Laws of 1892), which prohibits the use of the same name already applied to another domestic corporation, or one so nearly resembling it as to be calculated to deceive.    For this reason the name was changed and the incorporation was had under its present name.    In all other respects it remained the same.    The change in name in no wise affected the business to be carried on or the purpose of the incorporation.    After being incorporated, a certificate of one share of stock was duly issued by the officers of the corporation and delivered to the defendant, with a demand for the payment of the sum due under his subscription by virtue of the calls which had been then made by the corporation.    The defendant returned the certificate of stock, disclaimed all liability by virtue of his subscription, and denied that he sustained the relation of stockholder to the corporation.    Thereupon this action was brought.    The court below held that the agree-

ment was valid as a subscription to the capital stock of the corporation, and having been accepted and acted upon by the company and liability having been incurred upon the strength of it, the defendant was liable thereunder.

The defendant assails this conclusion as unsound in law, and he urges that the change in name is fatal, as he never subscribed to the stock of such a corporation; that the subscription was invalid, as ten per centum was not paid in when it was made, and that the agreement itself is invalid and does not constitute a binding subscription.

We shall examine these questions in the inverse order of their statement.

The law is fairly well settled that where parties propose to form a corporation and become shareholders therein, and such parties intend to become such shareholders without further act upon their part, upon the incorporation of the company, and the agreement remains open and is unrevoked, and the corporation is formed in pursuance of it, and thereafter acts upon it, by accepting the same, such agreement is valid and binding as a subscription to the capital stock of such corporation. (*Buffalo & Jamestown R. R. Co.* v. *Clark*, 22 Hun, 359; S. C., *sub nom. Buffalo & Jamestown R. R. Co.* v. *Gifford*, 87 N. Y. 294.) These decisions recognize that such an agreement is not valid and binding when made, as there is then in existence no party representing the company who is capable of contracting. But when the company is organized and acts upon the contract by an acceptance of what is regarded as an open continuing proposal, it becomes a valid binding agreement, to be enforced according to its terms. In the *Clark* and *Gifford* cases there was the element of ratification by the subscribers by payment of calls upon the stock after the corporation was organized. We do not understand, however, that the doctrine of these cases makes recognition by the subscriber an essential prerequisite. The contract becomes of force when the proposal remains open and the corporation accepts the same. (*Athol Music Hall Co.* v. *Carey*, 116 Mass. 473; *The Buffalo & Pittsburg R. R. Co.* v. *Hatch*, 20 N. Y. 161; *Non-Electric Fibre Mfg. Co.* v. *Peabody*, 21 App. Div. 247; Morawetz Corp. § 47.)

There are agreements of a somewhat similar character which do

not admit of enforcement and are not binding as a common-law agreement. It is quite easy to confuse the two classes, although there is a clear distinction between them. In the first class it is to be noticed that the agreement is to form a corporation and subscribe to its stock. The latter class are mutual agreements to subscribe for stock in a corporation thereafter to be formed. In the first the agreement is unconditional and absolute to form the corporation and take the stock, and when acted upon by the corporation is binding, as that is all that is needful to make the contract of force. Such contracts contemplate no further act upon the part of the person making such agreement. In the second class the agreement is to subscribe for shares when the company shall be organized. This clearly contemplates something more to be done, *i. e.*, the actual subscription. There exists no agreement in such case to become stockholders. When the corporation is formed such agreement is to take shares, which involves a subsequent act, that of formally subscribing for the stock. Illustrations of such contracts are found in *Lake Ontario Shore R. R. Co.* v. *Curtiss* (80 N. Y. 219); 1 Morawetz on Corporations (§ 49).

There is no essential difference between this case and the contract which was upheld in the *Clark* and *Gifford Cases* (*supra*), and we see no reason why a different rule should obtain. In the present case the plan was expressed to form a corporation for a particular purpose; after such recital the language used is, "We * * * hereby subscribe." This is absolute and unconditional; it does not contemplate further action upon the part of those signing and must be regarded as final, when, being unrevoked, it is acted upon by the corporation then in contemplation of formation. There is nothing in the statute which required that the defendant should sign the certificate of incorporation. This was only necessary to be done by the incorporators. The certificate requires the names and post office addreses of the subscribers to the stock, but it does not require that this shall be signed by the individual subscriber. All that is needed is the fact, which may be stated by any person possessing the required knowledge. (Business Corp. Law, § 2, subd. 9.) The payment of ten per cent when the agreement was made was not essential to its validity. It is clear, from the statute, that such payment is only

required of those who subscribe after the organization of the cor-
poration. As to the others, a different rule obtains. (Stock Corp. Law
[Chap. 564, Laws of 1890], §§ 41–43 ; *South Buffalo Nat. Gas Co.
v. Bain*, 9 Misc. Rep. 425.) Nor do we think that the change in the
name affects the defendant's liability. The purpose of the incorpora-
tion seems to have been carried out as contemplated. There was no
change in object or in substance. Contracts for the creation of
corporations are to be regarded as having been made in contempla-
tion of the authority existing in the State, and vested in State officers
by the Legislature, as well as the general powers of control possessed
by the Legislature over them. When the business is not changed or
the party is not shown to be prejudiced, and no fraud intervenes,
there exists no sound basis for being relieved from the contract whose
substance is fully performed. (*Schenectady & Saratoga Plank Road
Co.* v. *Thatcher*, 11 N. Y. 102 ; *The Buffalo & N. Y. City R. R.
Co.* v. *Dudley*, 14 id. 336 ; *Union Hotel Co.* v. *Hersee*, 79 id. 454.)
There is nothing further in the case which requires discussion.

The judgment should be affirmed.

All concurred, except CULLEN, J., absent.

Judgment affirmed, with costs.